Good morning. May it please the court, Nina Wilder on behalf of appellant Andrew Flyer. This appeal currently raises five issues. It once raised six, one of which, the Enriquez issue, has gone away. It was decided adversely to us. The five issues raised Excuse me, could you try to talk a little louder? Certainly. Put the microphone right near you. Is that better? Yes, it is. Okay. Sorry for that. And the issues break down into two, essentially two different categories. One set of issues deals with essentially the interpretation of various sections of 18 U.S.C. section 2252, specifically section 8.1, 8.1 and 8.4. And although the claims themselves are denominated as sufficiency of the evidence on the one hand and multiplicity on the other, they really are questions of statutory interpretation at bottom. Let me ask you a couple of things that were on my mind about this case. Certainly. If you put something in one of these peer-to-peer file sharing folders, why isn't that enough to show that you propose to share it across state lines? Because the statute, in effect, at the time that Mr. Flyer allegedly committed this offense, which was the transmission of two specific files, not all his files, the transmission of two specific files, the language of that statute, the jurisdictional language, was the in-commerce language. That is very narrow language. It has always been interpreted to mean and to require actual movement across state lines. And that's been true throughout the Ninth Circuit and other circuits interpreting. You know, for the cause of substantive offense, but the charge here is that it's attempt, right? Correct. Do you have to sort of, like, complete the interstate element in an attempt charge, or you just have to show that the defendant intended to show the interstate? Well, this case is charged peculiarly in that there, in fact, were transmissions, and the government, in fact, put on evidence from Cox, the ISP, the Internet Service Provider, regarding the transmission. The attempt really went to what Judge Kleinfeld was discussing, which is the intent. It was intent because he didn't intend really to send these two particular files to Agent Andrews, but he put them in a folder that permitted file sharing. If one looks at the cases ---- And then anyone else on the peer-to-peer network can look at things in the folder on your computer. Is that how it works? That's how it works, but that's not the charge. I think the charge is that he attempted to share things that were in that folder interstate. Is that correct? The charge is that he attempted to share two specific folders that were, in fact, transmitted, and they were transmitted via Cox Tower in Tucson. The transmission never left Tucson. That's the undisputed evidence. I'm asking about one thing, and you're answering about another. Did he put the prohibited images in a folder that was available on the peer-to-peer network? He did. And it was, in fact, available on the peer-to-peer network? As far as the evidence showed, yes. Why isn't that enough to show that he intended that anyone on the peer-to-peer network would be able to get an image? That may be the case, except that, again, the language of the statute at that point was very narrow. And if you look at the Schaeffer case, the Schaeffer case said that under the in-commerce language ---- What's the narrowness, the in-commerce language? Is a ---- It sounds like just a standard federal jurisdictional hook. No, it's not, Your Honor. In fact, there are three jurisdictional hooks at issue here. The original jurisdictional hook was in commerce, which every court has said is the most limited assertion of federal authority and require ---- of the Commerce Clause power, and, in fact, requires actual movement across state lines. And there are a multiplicity of cases that say that. At the other end of the spectrum is the ---- affects commerce standard or test. That is the broadest ---- But why isn't it in commerce if it's on the peer-to-peer network, which is a ---- I think all these peer-to-peer things are worldwide, aren't they? They are worldwide, except that there has to be an actual movement. Congress subsequently ---- Well, not for an attempt. Except that there was an actual transmission. He's charged with an actual transmission, and one of the things that courses through all of these cases and all these charges is that there's a specificity in the charging, which is what the defendant is given notice of, yet there is this generality in the proof. And that's true of the attempt, the attempt to transport, and that is true of the possession charge, that there are specific acts alleged, and those are not what's proven. What passes as proof is this generality about peer-to-peer networks. When one looks at the case law on the specific point, one will see that actually the evidence in similar cases is not simply that it was put in a peer-to-peer, on a peer-to-peer network. There's actual evidence that there were acts of distribution. That's not the case here, that the ---- there was actual evidence in the attempt cases that the individual, the user, intended to distribute, and that the individual was not the one who took acts to distribute beyond just putting it in the shared folder. And so what you have is essentially a presumption. You put it in the shared folder, and it is available to the world, and that's a fair presumption. But that's countered by a fact, and the fact is that this transmission, the two transmissions that are charged, never left Tucson. And that's the undisputed evidence in this case. Moving on, then, since that was the first issue I intended to address. Let me ask you something about the browser cache. On my particular computer setup, I can't see something that's in my browser cache unless I hook up to the Internet and my computer finds the site and checks the cache against the site and says, yep, that's the same thing. And then it shows me what's in the cache faster than if it had to download the whole thing. However, I think there are some setups where you can see what's in the cache even if you're not on the Internet. This is not a cache case. I thought a cache image was at stake. No. This is solely, and most of the cases that address the issue deal with both unallocated space and cache space. And those two very different. This one is just unallocated space? Solely unallocated space. The cache cases, therefore, are not directly on point. Okay. Now let me ask you something about the CD. On the CD, as I understand it, I can't remember for sure. I think we have a case, Guagliardo, that says it's enough if the CD was made in Thailand or someplace to turn your possession into interstate commerce across the state lines. That's the issue that we're no longer addressing. The interstate, as to possession, there were two separate issues. One was a straight possession, dominion and control issue. Whether once you put, again, specified images, once you double delete them, what you've done is you've deleted them once and then you've deleted them. So you're not addressing the CD anymore? In the sense that we're not addressing the jurisdictional issue on possession. Exceeding jurisdiction on the CD. Correct. Based on that case law. Correct. So I will step back then to the possession issue. And it has to be clear that even ROM, which is probably the leading case in the circuit, is a cash case. And so the issues are quite different. In an unallocated space case, the issue is the defendant has at some point in time, unclear when, had this material for some undetermined period of time on his hard drive. He has subsequently deleted it and put it in his recycle bin and deleted it again and put it into this area called unallocated space. It's a Windows computer? Yes. It's a PC. And. Now, with respect to that, I'll call it image, your point is that he didn't have possession because he didn't have knowledge and control? Is that what it comes down to? He had no dominion and control. There is nothing without a very, very, very expensive forensic program that you can do to retrieve that information. It's lost what's known as its attributes. He could not see it. He could not retrieve it. But, again, and I want to point out, the. It's not very expensive. I think for my computer it's about $49.95, but you need the program. You need the program. Is there evidence that he had one of those disk utilities? No. There's no evidence whatsoever that he had it. Well, let me ask you something.  I mean, is there any evidence that he had that was not found? And certainly all his computers were seized. They were analyzed. No, none of these programs were found. None of these applications were found. So he had completely deleted in the sense that he had no way absent possession of one of these programs to access. So there's nothing in the record to show that he had the ability to recover data from his, whatever you call it, the discard file. Well, it's not the discard. It's actually the unallocated space. Unallocated space. Correct. Not only is there nothing in the record to indicate that he could access it, I think it was generally conceded that he couldn't. That was the testimony of the expert. Without all the experts, without one of these programs, which are not so very expensive, he could not access this information in any way. And so what this became, and again, he's charged with possession of specific images on a specific date. And possession is what's known as a noncontinuous offense in Federal criminal jurisprudence. That is, there are continuing offenses where it doesn't matter what date, and there are noncontinuing offenses, possession being one of them, where the date is critical. It's critical for statute of limitation purposes. It's critical for venue purposes. The proof that came in was not that on the date specified he had any ability to access those images, but rather that at some point, unknown, unspecified, because all attributes are lost, they had been somewhere on his hard drive. That's all there is. And I specifically wanted to bring up the issue, bring up the Rahm case, because in Rahm, which is a cash case, C-A-C-H-E, the Court found possession based on a variety of evidence, very different than here, but also on the basis that you didn't require, the rule of lenity did not apply to possession of information on the Internet, of images, and took issue with Judge Kleinfeld's dissent in Gourd in Rahm, which paid great deference to the privacy interests involved in computers. And the reason the Court said we don't have to apply the rule of lenity is that, for no better reason than, we all know what possession means. That may be true. We know that possession means dominion and control. What we do not know is how that concept, which is medieval in origin, applies to these technological developments. There is no reason. It is not simple application. And that is why the rule of lenity does apply. And in the instances where it has not applied, Congress has specifically said that. For example, in the RICO statutes, the RICO says liberal construction applies to these statutes. This is very complicated questions about whether you are in possession of something. And the cases themselves are complicated. It is actually emblematic of the kind of case in which the rule of lenity should apply. If I'm going to reserve time for closing arguments for rebuttal, I need to stop now. Thank you, Counsel. Counsel. Good morning. May it please the Court, Celeste Corlett here on behalf of the United States from the District of Arizona. The district court did not plainly err in denying the defendant's motion for judgment of acquittal in count ones and count two. As the court has already pointed out, this was an attempted transportation case. Excuse me, Counsel. Let me ask you about the deleted images. Sure. On the deleted images, as I understand it, this is a Windows computer. He had dragged the images to the recycle bin and then he had emptied the recycle bin. Is that correct? Yes, Your Honor. When you drag them to the recycle bin, it really does nothing except put a flag in the directory saying that it's in the recycle bin. But once you delete them from the recycle bin, it erases the directory entry. So the only way to get them is to use a utility. I don't know what they have, whether they still have Norton Utilities for Windows of a Mac user. Norton Utilities are some equivalent to look at your erased files. Did the government put on evidence that he had one of those utilities? No, Your Honor. As far as I recall, there was no evidence that he had one of those utilities on his computer. Now, when you do delete that and you don't have one of those utilities, you just flat out can't look at those files. That's what I understand, yes. So I don't understand how he can be said to have dominion and control over them. Well, the charge was that on or before the date of his arrest, he had dominion and control or he had possessed them. So as we – Did it say on or before or on or about? Good question. One moment. I thought it said on or about, but I'm not sure. I think you're probably right. It's a usual language, isn't it? On or about. On or before usually would not be used because it could be before the statute of limitations. Yes, yes. So – And that wouldn't do. It could also be that you would have possession without knowing it. Like if you bought the drive used and the previous owner had erased it, but he hadn't written over it. So the on or about phrase doesn't help you, does it? Well, it helps in the fact that the government was not saying that on a specific date he possessed that, but rather saying that by evidence of him having deleted it at one time, it was on his computer and that he had dominion and control. The charge is not that at one time it was on his computer. It says on or about a certain date. That's correct. And you haven't – there's no proof of that in the sense that he had dominion and control on or about that date, right? I mean, Ms. Wilder said there was no disagreement that he couldn't recover it. Well, I don't agree that there was no disagreement that he could recover. I believe the testimony was that certain sophisticated computer users could recover, but they didn't have any specific information about him or, as Your Honor said, any program. So you're saying that there's sufficient evidence that he had possession and control on or about that date? That is our position. Our position based on the fact that at some point he had to have deleted it for it to be allocated. At some point, it's not on or about that date. As Judge Kleinfeld said, it could have been, you know, years before the statute of limitations started to run, right? I understand that, yes. Well, you don't even know unless you proved he bought it all new and clean that he had the images ever. He might have gotten it at the Salvation Army. Well, there was no testimony that he had purchased it used or that he had gotten it from someone else or that someone else had been on it. He didn't use it but him? I thought he had a friend who used it. I don't recall that testimony. Well, the testimony was he and a friend, right? He had a close friend that used it also. I'm sorry. I don't recall the testimony in this case about he and a friend. But I do recognize that that is an issue with the unallocated files. Well, then let me ask you to address this business about the in-commerce requirement on two other counts and the evidence showing that the transmission never left Tucson. Now, even though this is an attempt case, don't you have to establish the jurisdictional element? Well, we have to show that he attempted to transport it in interstate commerce, and we showed the interstate commerce the attempt to transport it interstate commerce by him putting it on the peer-to-peer, by the peer-to-peer being available on the Internet to anyone who was also on peer-to-peer. No, but why is that show an attempt at interstate commerce when the recipient says right next door or, you know, in the same city? Well, we're not saying that the recipient proved that it was interstate commerce. What we're saying is that by him putting it available on the peer-to-peer to anyone in peer-to-peer, and those are available to anyone around the world can get into it. All he limited it. It's available, but where does the attempt come in? When he puts it on the peer-to-peer, his only limit to anyone who wants to access it. The charge is not a general attempt. He had this pornographic image, and he attempted to transmit it worldwide. That's not the charge, right? The charge is he attempted to transfer it to the agent. No, the charge is that he attempted to transport it. And to show that it was child pornography, the specific image that he transferred to the agent was listed in the indictment. So his attempt. The charge was just merely that he attempted to transfer it in commerce? Correct. I better look at the indictment. This is what counts, two or three? This is count one and two. So it's that on or about March 9th that he intentionally attempted to mail, transport, and ship in interstate commerce the visual depiction, and then we described the visual depiction. The only evidence of the attempt was the transfer to the agent. No, the evidence of the attempt. What are you saying? Just because he has it in the lime wire, that in itself is an attempt? Well, it's not just that he has it in the lime wire. That's my first question. Okay. So you don't say, it's not the government's position that just because he posted it on his lime wire folder, you're not arguing that that itself is an attempt? Well, the lime wire has to be essentially turned on to be available. The moment anybody turns on a computer with a lime wire, that's an attempt to transport an interstate commerce? In this particular case with these facts, his having designed his computer to allow other people to download from it, his putting child pornography on that file. I'm just talking about not the content, but just the in-commerce requirement. So you're saying that opening up a lime wire file is an attempt to transport in-commerce? With all of the structure that goes with it. But we have even more than that in this case. It seems like what would happen in this is the person would be utterly indifferent to who retrieved it. He knows that in order to look at the kind of pictures he likes to look at, he has to make pictures available to others. And by putting them in the share folder for the peer-to-peer network, he's doing what he has to do to get the pictures for himself, but he's then utterly indifferent. Is there case law that says being utterly indifferent to where it goes and creating a situation where it's likely to go interstate is enough? I'm not sure if I understand the question. He's not trying to send a picture to Nevada or Pennsylvania or Germany. Even though he has that capability. Even though he knows perfectly well that people in Germany or Nevada or Pennsylvania may decide to download the picture. He's indifferent. He doesn't care whether they go there. I don't see how he can be indifferent if he's specifically saying 20 people can go into my peer-to-peer and download my files. That's not being indifferent. Indifferent would be if you did not allow any users into your file, then you're not letting people in. Indifferent might be like leaving your door unlocked because you don't care what anyone steals. It doesn't mean you're trying to give them the stuff. That's a good example because that would be as if he got the program. It already was set for 20 users and he just left it at that. But he didn't. He specifically went in. I mean, your assertion is quite broad. Your assertion that any time a person uses or activates some apparatus that's capable of interstate commerce, that person is attempting at that point, right, to be in commerce. It's not any different than saying, you know, when I get in my car and turn on the engine, I mean, I'm in commerce, even though I'm only going to the grocery store. No, I'm not trying to say more than what this case has, what the facts are in this case. And the facts are in this case are not just that he turned on LimeWire. The facts are in this case. That's what I'm trying to get at. Now, what establishes the in-commerce requirement in this case? In this case. These two counts. In this case, he designed his computer to allow for file sharing. He placed the images of child pornography on his peer-to-peer. He also configured the peer-to-peer so that 20 people could download. Not just 20 people look at it, but 20 people could download. Well, he had LimeWire on his computer, right? And we also know. So you're saying all you have to do is have LimeWire on your computer and you're in commerce. Is that right? Is that what you're saying? If you have designed it so that people from anywhere in the world can come onto your computer and download, then you have attempted. It's different than saying, you know, I-5 is designed to go to Oregon. So when I get in my car and get on the freeway, I'm in commerce, right? Even though I'm going to get off at the next stop and go to the shopping center. I don't know that we could compare that to an electronic database. Well, that's in commerce. I probably didn't make my question clear earlier. What he's done is he's got a particular piece of his hard drive and he's unlocked it to the world. He left the door open. Anyone in the world can go and look. And I want to know. To me, it seems fairly probable that if you do that, somebody outside your state is going to look because the electrons don't pay any attention to state boundaries. However, I don't know if there's any law that says that just leaving the door open, leaving the door unlocked, which is what a sharing folder on a peer-to-peer network is, is enough. Is there a case? I'm looking now because I thought that- You know, it would be enough if the requirement was, as it was later amended to be, that, say, you know, use of a facility, right? Right. But- In this case. But I don't think we need that much here because it's just an attempt to transport it. Well, he didn't try to e-mail a dirty picture across state lines. He just left the door unlocked. But we do know that when the file was downloaded, that it was-someone was able to download it through the Internet. So we know that it wasn't just that- So if the jurisdictional requirement were that, you know, use of a facility, right? I mean, that's really almost what you're arguing. It's not any different than use of a facility, are you? Well, I think that it is-I understand the difference in how the statute is changed. But I think that even under the old statute that we meet that burden because this is an attempt to transport, which is what he did. And the case is United States v. Schaefer, which is a 10 circuit case that does say that peer-to-peer applications allow users to easily share file storage on their computer over the Internet. And- See, remember now, you know, Schaefer says the mere fact that you've accessed the Internet is not sufficient to meet the income requirement, right? Well, we wouldn't agree with-Schaefer and I think a lot of circuits have not agreed in that way. But what-his was not just the mere fact of using the Internet. He was posting all of these pictures available for anyone to come onto his computer and download those. And in an attempt, that's what he's doing. He's attempting to transport them through Interstate Commerce because he knows that by that program, anyone can access them. And, Your Honor, if I could go on to counts three and four on the multiplicity counts or the multiplicity charge. The government also would argue that the district court did not err in denying the motion to dismiss for double jeopardy on the multiplicity because this court in Shells at page 979 said that where the defendant has stored child pornography in separate medium, the government may constitutionally charge the defendant with separate counts of each type of material on the medium possessed. That's once for the computer hard drive and once for the CD? Correct. And here you're talking about separate medium, right? Separate medium, correct. And this is supported by Overton. Defense counsel makes a distinction between the large A and the small A of the statutes. However, Overton doesn't make that distinction. And it's clear that it does support it in both ways. And is that what we're talking about, same image, once on the hard drive, once on the CD? In this particular case, it was not the same image. It was two different images, one on the hard drive, one on the CD. So it even has not only was it different acts, but it was also different images. Your Honor, I see my time is up, but I would ask the Court to submit the rest of our arguments based on our record. Thank you, Your Honors. Thank you, counsel. Just a few points. I believe the case that the government was referring to, there's a Schaeffer case in the Tenth Circuit which says that nearly getting on the Internet, as Your Honor said, does not in itself constitute being in interstate commerce. There's a Schaeffer case that also dealt with the issue and that dealt with specifically Kazaa, which is another one of these P2P networks. And what the evidence in Schaeffer was not simply that the defendant had placed, had used, was using a P2P facility. It was that he knew that for transferring files, for distribution out of his shared folder, he got bonus points or something called use points. And so he specifically stated that, therefore, he left his computer on all day when he went to work in order to garner those bonus points. In that case, you have an intentionality that is entirely missing from simply having LimeWire. As to multiplicity, the fact is that the issue here is not, as I came to find out, double jeopardy. The issue is unit of prosecution and because it's the same statute. You only get to double jeopardy when you have different statutes like receipt and possession. This is a single possession statute. It's the language of that statute is one or more. It used to be three or more. The language of that statute is not any. There's a case directly on point out of the Second Circuit. It's Polizzi, Polizzi, 564F3rd142. And what that – that case looked at that precise statute, exactly the same statute here. And there was a seizure in which there were images found on a variety of media, and the Court concluded that if one or more, in contrast to any, means that the unit of prosecution for that provision of 2252 is any amount of pornography or materials that are, in fact, seized at the same time in the same place. It's a little like the gun statute. So ten pictures have to be charged on one count, not ten counts. Correct. And as a functional matter, that makes no difference because under the guidelines, you're going to get sentenced for ten pictures, not one picture. So ultimately, it makes no – it has no real impact. But what it does – what is required is that we cleave to the language of the statute. The grouping doesn't eliminate the problem? No, because if you had one – one count with ten, and ten counts each with one, you'd have ten images. It's exactly the same. That's the kind of grouping. Can a sentence come out different if it's ten counts? No. No. It does not necessarily – well, it does not necessarily come out different. Well, if the sentence is no different, what difference does it make? Well, as the Court has said in Polizzi, Kimbrough, Navarro, and the other cases, there can be collateral consequences to multiple counts. And the fact is that we don't look at – Only one I'm missing in. Well, my client, for example, under this example, would have ten felony convictions, not one felony conviction. That is a considerable difference in the environment in which we live. We'd have one judgment of conviction. But we have ten convictions. So, for example, in a three-strikes environment, and that's not what we're talking about, you either have one conviction or you have ten. It has – it can have significant consequences, particularly in the priors context. But additionally, and the point I continue to make, and I'm running over and I apologize, is that the statute has particular language. The legislature chose that language. And our function is to abide by the language the legislature used. Thank you, counsel. Thank you. United States v. Flyer is submitted.
judges: Kleinfeld, Tashima, Thomas